THE STATE OF TEXAS
THE COUNTY OF BEXAR

My name is Nancy Sanford. I am a Special Agent with the Drug Enforcement Administration. I was the lead investigator and case agent in a long term investigation of members of the Texas Mexican Mafia that resulted in an indictment returned August 18, 2004 in Cause Number SA04CR425.

In the course of the investigation, I spent hundreds of hours engaged in investigatory duties, such as conducting physical surveillance, interviewing numerous witnesses, speaking with other investigators, cataloging evidence, reviewing intercepted electronic communications, and apprising the federal prosecutors of the progress of the investigation.

In the typical investigation and prosecution of cases in which I have participated, the case agent has little participation in the discovery process. I usually deliver a copy of all case reports to the federal prosecutor and the federal prosecutor is responsible for making discovery available to defense counsel. However all contraband and physical evidence is the responsibility of the case agent who maintains the physical evidence in a secure vault. If defense counsel or the prosecutor wishes to view or examine any such physical evidence, I make appropriate arrangements.

The case against members of the Texas Mexican Mafia in No. 04CR425 was not typical however due to the sheer volume of materials and physical evidence. Well before the case was presented to the grand jury for indictment, the lead investigators and I met with the prosecutors, Joey Contreras and Joe Sepeda, to determine how the documentary and physical evidence would be organized and, similarly, how discovery could best be conducted. Because nearly all defense counsel have their offices downtown, we decided that it would be easier for discovery to be carried out downtown.

The U.S. Attorney's Office maintains office space on the 6th floor of the Federal Building on Durango. The prosecutors and I decided that we would maintain all documentary evidence in a designated room at the U.S. Attorney's Office downtown. The room was to be kept locked at all times and only I would have a key. We also decided that we would keep the physical evidence in the same room with the exception of narcotics and firearms.

The evidence in the room downtown was organized by me and fellow agents mostly chronologically, by defendant, and by event. The documentary evidence overwhelmingly consisted of DEA reports and police reports by other agencies. These reports were placed in bins that were labeled by date, or by defendant, or perhaps by a specific occurrence (for example, all reports and photos related to the murder of Jose "Arte" Moreno were placed in a box labeled "Arte Moreno murder.")

The prosecutors and I decided that discovery would occur at the downtown office.

1

All defense counsel would have full access to all documentary evidence and physical evidence. If defense counsel wished to inspect any physical evidence that was not kept downtown, such as narcotics or firearms, they would be instructed to ask me and I would make the arrangements.

After the case was indicted, the discovery room downtown was used to provide discovery to counsel for all defendants. We provided private rooms for defense attorneys to take notes, a television and VCR to view evidentiary videotapes and a cassette player to listen to all cassette recorded evidence. Defense attorneys were provided CDs to listen to intercepted communications.

In the course of the investigation two prosecution witnesses were murdered for cooperating with the prosecution. For this reason, we were extremely wary of providing the defendants with the identities of cooperating witnesses before the law required us to do so. Therefore, we did not provide witness statement of any informants to the defense. Instead we informed defense counsel that witness statements of cooperating informants and cooperating co-conspirators would be provided at the time of trial as required by *Jencks* and the Court's discovery order. This procedure was explained to all defense attorneys.

On September 20, 2004, the prosecution sent each defense attorney a letter that set out he procedure for defense attorneys who wished to conduct discovery. I have attached a copy of the letter in this Affidavit. The procedure was simple: the attorney called me on my cellular telephone and arranged a time to inspect the evidence. Attorneys were allowed to inspect the evidence as often as they wanted and for as long as they wanted.

I have read Jimmy Zavala's affidavit dated April 18, 2008 in which he discusses the discovery procedure. Mr. Zavala makes claims that are not true.
1. No evidence was ever classified by me, any agents, the prosecutors, or the Court as "secret or classified."
2. The discovery room was not under the Court's control. I had the only key but allowed defense counsel access any time they made a request.
3. There was never any ex parte conference between the prosecution and the Court in which "criteria for the selection of evidence" was discussed. There was never any ex parte conference on any topic held in which defense counsel was excluded.

I recall that Mr. Zavala retained Mr. Blas Delgado, a decision over which the Government had no say. Later, Mr. Joel Perez joined Mr. Zavala's defense team, a decision over which the Government had no say. Eventually Mr. Delgado and Mr. Perez withdrew from the case and Mr. Zavala hired Mr. Terry McDonald. I do not know why Mr. Zavala hired any of these attorneys and had no say so in the matter. I am not aware of any list of defense attorneys "approved" by the prosecution. I was present at the Initial Appearances made by the defendants in this cause where those defendants who wished to have counsel appointed were heard. Neither myself nor the prosecutors were ever consulted about the

appointment of attorneys.

Further affiant saith not.

_Nancy Sanford_

Nancy Sanford

DEA

Subscribed and acknowledged before me by Nancy Sanford, affiant, on April 22, 2008.

NOTARY PUBLIC, STATE OF TEXAS

My Commission Expires:

_____

Printed or Stamped Name of Notary

JANET Y. LUNSFORD
MY COMMISSION EXPIRES
April 24, 2011

3